This time we'll hear Daly v. United States v. City of New York. Good morning, Your Honour. May it please the Court, my name is Neil McAuliffe-Wee. I'm appearing on behalf of the appellant, John Daly. Your Honours, for purposes of oral argument, I want to focus on three particular issues. The first issue being the procedure by which Mr. Daly was removed from his position as shop steward. The second issue being the two exceptions to Title 29, Section 186 of the U.S. Code. And the third issue being the lawfulness or otherwise of the subpoena used to obtain Mr. Daly's cell site records. Now, with regard to the first of those issues, the 2014 stipulation and order in this case allowed the Federal Monitor, it provided for two procedures by which he would pursue alleged wrongdoing. The first procedure was under Paragraph 5B. The second procedure was under Paragraph 5F. Now, Paragraph 5 sets out his powers. The first procedure is a summary procedure. By its terms, it's limited to officers and employees of the union. The second procedure is essentially a trial procedure. It encompasses officers, employees, but also representatives, agents, and members of the union. So effectively... But the key difference procedurally is that in the latter instance, there would be a hearing. Yes, Your Honour, it's... But there was a hearing in this case. Well, I mean, practically speaking, what are we talking about? Well, what the second procedure provides for is a trial, and it's subject to, or at least the trial procedures that it provides for are in accord with the full and fair hearing requirements of federal union law. The first procedure doesn't provide for a full and fair hearing, meaning Mr. Daly wasn't allowed to be heard on his behalf before the Executive Committee who made the decision. So what you wanted and did not get is a full trial before the Committee? Well, not just before the Committee, but under the second kind of proceeding, which is the Paragraph 5F proceeding, Mr. Daly would be judged by his peers. He wouldn't be judged by the Executive Committee, he would be judged by his peers. He would have a right to give evidence to cross-examine. It's not a full-blown trial, but it certainly... He would have been afforded far more opportunity to be heard than under the first procedure, and he would have been heard by his peers rather than by the Executive Committee. Now, obviously it's speculation as to how he would have fared before his peers, but the point here is that the monitor was not entitled, regardless of what the result may or may not have been, he wasn't entitled to proceed under the first procedure because... Had Chap Stewart's been removed before your time? Yes. Under which procedure? They were, well, according to the appellee and I note in their brief, they indicate that on four previous occasions, Chap Stewart's were removed. Now, on one of those occasions, the removal was challenged, and that's the Willoughby case that Judge Berman relied on in this case, too, and the Willoughby case was decided on a mistaken basis, and the appellee... But they were all adjudicated under the abbreviated procedures? They were, but they were all adjudicated... They were, Your Honor, but they... But our position certainly would be that, um, if you like, two wrongs don't make a right... Necessarily, you think that all of those cases were adjudicated under improper standards? Yes, Your Honor, and the only one that was actually challenged before Judge Berman is the Willoughby case. A notice of appeal was filed in that particular case, and the matter was settled before it was heard by this Court. It just seems to me that after that case, they entered the 2014 agreement, and if this was... done improperly, they would have changed this language, because this language seems to me to be able to support one view or the other, and it goes along being handled this way, and nothing has changed. The 2014 agreement is signed, so it sounds like the parties have kind of agreed that this broad language of B is broad enough to cover this. Your Honor, they're relying on the Willoughby decision, and the Willoughby decision is wrong. I know, but the Willoughby decision's out there. They've been proceeding under B, okay, and it seems to me if they shouldn't be under B, there would have been a renegotiation or a rewording of this. Well, Your Honor, they... Does that happen before the 2014 agreement? Yes, Your Honor, and certainly, I can't speak for... My client's not a party to the agreement, so I can't speak for the process by which the 2014 stipulation and order was negotiated and agreed. Obviously, the language is largely word for word, not just in this respect, but in all respects. The appellees have certainly brought up the principle of ratification in their papers, but that principle depends on settled uniform law in terms of an interpretation. What you have here is one case from Judge Berman back in 2010 that got it wrong, I do not... I certainly submit that that is not a sufficient basis upon which to uphold the interpretation being presented by the appellees now. The problem, just following up on Judge Rustani's line of argument, you know, this is a procedure which to some extent is... I mean, it's unheard of, but it's a procedure that in many respects has taken on a life of its own, and what it appears is that the parties ratified the procedure. Well, Your Honor, I was not, again, I wasn't privy to the content of the negotiation, and I don't think any of us know, certainly it's not in the record, as to whether this was an issue at the time the 2014 stipulation in order was entered by the court. Again, the point I would make is that it was raised previously, and the decision of Judge Berman in the Willoughby case is clearly wrong, and the appellees accept that it's wrong. Now, I don't know of any principle of law whereby a single decision on a point of law where the judge got it wrong can be used as a basis, then, to support that same interpretation with regard to similar language in a subsequent either consent decree or stipulation in order. I think at most you have some kind of ambiguity. It looked like 5F to me. Its basic thrust was, let's make sure they're good procedures, and then under that, you have this ability to take disciplinary proceedings, but under B, it's also pretty broad. It applies to all persons currently holding office or employment, and it doesn't govern district council officers, but he's not an officer of the district council. He's a shop steward, so I have a hard time understanding why he's not a person holding office or employment of some kind with the district council or its constituent unions. Your Honor, I would look at it the other way around. I would start with 5F, and I would look at what the positions that are specified there. So, you have person holding office, employee, then representative, agent, member. Now, member includes everybody, but in terms of a representative and an agent, that's exactly what a shop steward is. There's case law to that effect. The bylaws are to that effect, too. You don't think he's a member of the district council or its constituent local? Yes. Excuse me, Your Honor. I may not have been clear. Everybody is a member. That covers everybody within the union, but if you like, the next step up is either an agent or representative, where you're not an employee of the union, which he clearly is not. You're not an officer of the union, which he's not either. You're a representative. You represent the union on the job site as shop steward. Are we entitled to look at past practices to determine what these clauses mean? Excuse me, Your Honor. I didn't hear your question. Are we entitled to look at past practices, i.e., the fact that this clause has been applied against shop stewards to aid our having said that, when you look at those past practices, I think you have to start and end with Willoughby. And in that case, there's a past practice that was upheld by the judge, but upheld on a basis that everybody now accepts was mistaken. So, Your Honor, I don't think the language is ambiguous. I think the shop steward clearly falls outside of—he's not an employee. There's no argument there. He's not an officer, as that term is defined under federal labor law. He clearly falls under the 5F procedure. I don't think there's ambiguity in that regard, but to the extent that there is, and you look at the prior practice, you're going to find, as I say, the Willoughby decision. And in Willoughby, the judge got it wrong. Do you contest the proposition that there was substantial evidence to support a conclusion that your client received money for work you did in the field? Not on this appeal, Your Honor. Let me say this. I don't agree with the conclusion of the monitor, but I recognize that under the standard, if two different conclusions can be drawn from the evidence, then it meets the standard, and that, Your Honor, is why I didn't advance that point on appeal. But we owe—I take it you're citing the provision that says that we owe the monitor's ruling the same deference that we would give the final order of an agency? With regard to substantial evidence, yes, Your Honor. And how about with regard to ambiguity? I mean, that— I mean, in terms of the procedure he followed. Correct. No, no. I don't think there's any deference out, because I think that's an issue of law or an issue of the construction of the stipulation. We have all kinds of issues of law that are made by agencies, and we owe deference to those. Your Honor, I don't believe that there's any deference owed to the interpretation by the monitor of the— You're correct if it is unambiguous. No, I don't think there's any deference. I think the construction of a consent decree is a matter of law. I don't think deference is owed to a monitor appointed under that stipulation and order. And certainly, my understanding of, not just in this particular case, but in all the union consent decree cases, the standard that has been applied in terms of the interpretation of the consent decree is one in which no deference is given to the interpretation by the monitor. You know about it. Exactly, Your Honor. Thank you. You've reserved a minute to rebuttal. Thank you, Your Honor. We'll hear you then. Thank you. Good morning. Good morning, Your Honor, and may it please the Court. My name is Teresa Lee, and I represent Defendant Apelli, the New York City and Vicinity District Council of Carpenters. Let me begin briefly with some background. When a job is called into the union, someone with an appropriate certification and construction skills is appointed by the District Council as the shop steward on the job. On the job, the steward is in charge of keeping track of all the hours and reporting back to the District Council the hours worked by each member on that job site, including himself. In this case, Mr. Daley held the position of steward, an office that had been plagued by job site corruption underlying the RICO action in this case, including no-show work, and reported that he was on the job for hours he simply wasn't. Do you consider him to hold an office in the District Council? Yes, Your Honor, and I'll just move ahead. Who would be covered by F? Who wouldn't be covered by B? Well, Sections B and F are not intended to be exclusive. That the monitor might have power under Section F doesn't strip him of any powers under Section B. But does it give him a right to a full hearing? If proceeding under Section F, he would be given, follow the trial procedures that were- Basically, you could decide whether he gets the full trial that F contemplates by deciding whether you're going to cite him under subparagraph B or subparagraph F. Yes, that's a power that the independent monitor would have, Your Honor. Both the review officer, which operated under these same procedures since 2010, and the independent monitor have never brought disciplinary proceedings under Section 5F. The focus there, as Judge Rustani stated, was to ensure that the District Council had full and fair trial procedures. Having an internal union trial is quite typical for the charges against individual members. There were many issues with corruption, and one concern in the enactment of this stipulation was to ensure that procedure, which is required to be had by the United Brotherhood of Carpenters, by the international union, would be fair. That's why that's included here. As both Judge Parker and Judge Rustani stated, the parties knew full well and relied upon the fact that shop stewards could be removed under the more summary proceedings of 5B. They knew this in drafting the stipulation, intended the same reach. Other changes were made to Section 5B in order to address issues that the parties wanted to change, which included the addition of the oversight of the Executive Committee. Is this in the record? Excuse me, Your Honor? Is this in the record? Is what you're just telling us in the record before us? That the extent to which they knew, Your Honor? These negotiations, these back and forth with compromises that were reached? I don't believe that there are any red lines of the stipulation in the record, Your Honor. Shortly before the entry of the 2014 stipulation, the District Court was interested in the extent to which the review officer had used his, what was called at the time, veto power, as that was a large issue between the District Council in hoping to have a sort of step-down oversight. One of the key aims of federal labor policy is increased self-governance, and so that was the purpose of the addition of the oversight of the Executive Committee, and that was part of, there was a filing listing all of the times the so-called veto power was used. Somehow I saw both the 2010, the one that was in effect, and the 2014, so I'm wondering. Yes, they're both, oh, yes, the finals of both the entered 2010 and 2014 stipulations, yes, are both in the record here, Your Honor. I thought Judge Parker was asking if there were sort of variations of the drafts in between 2010 and 2014. Oh, okay, but I can compare the final two. Yes, certainly, Your Honor. Would you agree that our review of this legal question is de novo? Yes, Your Honor. Yes, you disagree, or yes, it is de novo? Yes, it is de novo, Your Honor, and as— So we don't owe deference to anybody's interpretation of this agreement? No, Your Honor, you would review the language, and if there's ambiguity, which I fully contend that there is, you would look to the party's intent. And here, person's holding office is not defined anywhere. Appellant notably continues to state officer, even though that's not what's included in Section 5B, and courts regularly look to past practice to give definition. Can I ask something about Shop Stewards that just started with this?  He's the conduit between the local, the on-site local, and the district council. Not so much the on-site local, Your Honor, between the job site, the contractor, the employer— Okay, well— —the construction site. Locals' operation at a particular job site, or what the union people are doing at a particular— Yes, yes, Your Honor. Does the district council give them a phone? The Shop Stewards are issued tablets, like an electronic Motorola-type tablet. They also are permitted to enter time via a district council created through an IT vendor, obviously, portal on either the tablet, or they could do it on their phone, their personal phone. But Shop Stewards are issued an electronic tablet. Okay. The wireless and cellular are paid for by the district council, as to that tablet. Okay. It's claimed that the subpoena was unlawful. What was obtained by the subpoena that mattered in this case? The historical cell site location information for Mr. Daly's phone was obtained by the subpoena in this case. The review officer who originally issued the notice of action against Mr. Daly did it based upon the hours that typically would have been worked. Mr. Daly submitted a listing refuting that those hours actually weren't worked, saying instead that he had come in much earlier or returned to the job site on days where he was known to be elsewhere by the union. So, in an abundance of caution, the monitor provided counsel to Mr. Daly additional time to respond and sought the subpoena to gather the cell site information, which proved rather definitively that as to 17 of the days in question, either between two and seven hours were over-reported and overpaid as to Mr. Daly. Was he separately paid for his union work? He would be paid a stipend. The union work that was off-site was not work as a steward. It was work as an executive delegate, for which he has paid a stipend for that work. The executive delegate is an elected office, and there appears to be little argument over the monitor's reach there. Thank you. Stipend for his executive delegate work, it's not for his shop steward work? It's not for his shop steward work. The hours paid under the CBA for work done as the steward must be given sufficient time to complete his steward duties, and that's contemplated by the CBA and thus by reason of his employment under Section 186 versus this other executive delegate activity that was taking place elsewhere. Thank you. Thank you, Your Honors. Your Honor, I'm going to deal briefly with two points in terms of the shop steward question. My learning colleague here has said that I'm the one using the word officer, whereas the word or the phrase in the stipulation in order is person's holding office. Your Honors, if you look at paragraph 5F, the word officer is used, so it's clear when you look at the stipulation in order as a whole. The word officer and the phrase person holding office are used interchangeably. If I use them interchangeably, it's because that's how they're used in the stipulation in order. A person holding office is an officer, as the stipulation in order makes clear. The other point that's made in terms of the difference between the two, the question, Judge Freestanding, that you asked is, if other than members, which obviously are a category that are not covered by 5B, in terms of representatives and agents, to whom does that refer? It doesn't refer to anybody, seemingly, except for shop stewards. Otherwise, the language is entirely superfluous. Now, in terms of the subpoena, I'll say quickly that I think it's important. We spoke about the previous stipulation order in 2010. Judge Haight, Judge Berman's predecessor, he insisted on showing a probable cause before a subpoena was issued. That standard was not mentioned here. It certainly wasn't met. I know I dwelt at some length on the Fourth Amendment issue in my briefs. I don't think it's necessary for the Court to reach that, simply because the standard of Judge Haight answered that question. That was the standard that he required. It's the standard here I would submit to. The other point is that in this particular case, in every single other consent decree RICO case, subpoenas addressed to non-parties are issued pursuant to the All Writs Act. Here, the monitor denied explicitly that he sought the subpoena under that Act. The Court stated explicitly that it didn't issue it under that Act. I would submit that, other than under that Act, there is no basis to submit a subpoena to a non-party under a consent decree when the person issuing the subpoena is himself a non-party. Now, I addressed in my brief as to whether there's any other basis. Yes, he's an officer of the Court. But if you look at Rule 45, it requires a party to the action. This same issue arose in the Third Circuit, in the Ciara case, where the Government sought a subpoena, or sought to take the deposition of a non-party, and the Court looked at the equivalent rule and found that it could only be availed of by parties, by which it understood to mean parties to the action. The independent monitor here is not a party to the action. Now, one theory that was not— Well, the judge said, look, I'm interested in really getting to the bottom of whether this man actually was claiming a payment of compensation for what he didn't do. So, Mr. Monitor, I want you to subpoena, get these records, and I present them. What's wrong with that? Nothing wrong with it, Your Honor, except that it has to be done pursuant to the All Writs Act. There's a particular standard that has to be met, and I would also submit in this case that because Judge Haight used a standard of probable cause before he would issue such a subpoena, that same standard would have applied here, and that standard wasn't met. And what the monitor said is that he sought the subpoena to, in his own words, cast light on the whereabouts of Mr. Daley. He made no showing whatsoever that would meet a standard of probable cause. And— Probable cause for what? What do you think of probable cause in that area? Well, probable cause—again, I'm going by what Judge Haight indicated was his particular standard. I would understand in this particular case that what is meant is that there is probable cause that Mr. Daley—certainly, he was off the job site at certain times—I think it's about 50 hours over the course of a year—conducting union business. For most of those days, he came in early. He came and worked late. The question is whether there was probable cause nonetheless to indicate that the hours he made up were not the full hours that he was off the job site engaged in union duty. And let me just conclude in terms of those hours he was off the site as to whether that's a criminal offense. Wasn't there probable cause to believe that this information sort may have a bearing on something that was being adjudicated in this proceeding? Well, I think it's speculative, Your Honor. I don't think so, but again, I have not seen the application, and the application was not disclosed. Certainly, the subpoena was not sought under that standard. It wasn't issued under that standard. It's not in the record as to what showing he made in terms of a warrant. It's like, as it were, trying to determine if a warrant is supported by probable cause without seeing the underlying application. That's the situation we're in here. The only thing we can go by in terms of what's in the record is what the monitor himself said about why he was looking for the subpoena, and he said it was to cast light on the whereabouts and to either prove or disprove the account. Now, that would certainly meet the Rule 45 standard, but that's not a Rule 45 subpoena we would submit. Why wouldn't that meet the All-Ritz Act standard if Rule 45 or nothing else in the, you know, rules or are? Well, Your Honor, again, it may meet the All-Ritz Act standard, except that that's— Did you say it didn't? Well, I don't think it did, and the reason I say that is that the All-Ritz Act has now been applied in a more rigorous way than was previously the case. Also, it would seem to me that the probable cause standard that Judge Haight was using, he had incorporated that into, if you like, the overall All-Ritz standard, meaning that in terms of whether it was acceptable to him to issue a subpoena under the All-Ritz Act, he required a showing of probable cause. And again, if I could make one final point in terms of the job—or the time he spent off-site. Obviously, we're dealing with a criminal statute. We're dealing with two exceptions to that statute. Those exceptions must be interpreted broadly. The statute itself is on its face, very broad in its reach. This Court did address these kind of payments in the BSF case. The question is whether they're required to be provided for in a collective bargaining agreement. Even though they were in that case, the Court didn't say—or this Court didn't say— Not in this case. Not in this case. No, they're not. But this Court, in the BSF case, didn't say that that was the only way they could pass muster. And in fact, it compared them to three other kinds of what it described as fringe benefits, meaning sick leave, jury leave, and military leave. Now, those kinds of, quote-unquote, fringe benefits are equally not provided for in this collective bargaining agreement and not in collective bargaining agreements in general. Nonetheless, they would pass muster under that particular test. The final point I would make, Your Honor, is that the Court there also pointed to the other federal statute, which is Section 8A2 of the LMRDA, where an employer is allowed to pay an employee for time engaged off the job in union business. And in the case of that particular statute, no collective bargaining agreement has ever been required. And finally— Thank you. Excuse me. Thank you, Your Honor. I apologize, Your Honor. I didn't mean to— No, that's quite all right. —go so far. Thank you very much. Thank you both. We'll reserve decision.